UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ALFONSO CARLOS LUELMO MONTERO DEALBA,

                         Plaintiff,

             -against-

BLOOMINGDALE'S, INC., BLOOMINGDALE'S
STORE DETECTIVE GINETTE RUIZ,
BLOOMINGDALE'S PERSONNEL JOHN/JANE DOE
#1-10 (THE NAME(S) JOHN/JANE DOE BEING
FICTITIOUS, AS THE TRUE NAME(S) IS/ARE
PRESENTLY UNKNOWN), THE CITY OF NEW
YORK, OFFICER JOSE RODRIGUEZ (N.Y.P.D.)
SHIELD #21138, OFFICER(S) JOHN/JANE DOE #1-10
(THE NAME(S) JOHN/JANE DOE BEING
FICTICIOUS, AS THE TRUE NAME(S) IS/ARE
PRESENTLY UNKNOWN),

                    Defendants.
-----------------------------------------------------------------------X

Index No.:


**COMPLAINT**

**JURY TRIAL
DEMANDED**

       The Plaintiff, complaining by his attorney(s), THE LAW OFFICE OF ANDREW L.

HOFFMAN, P.C., respectfully shows this Court and alleges:


**INTRODUCTION**

1.   This action is to vindicate the rights of Plaintiff Alfonso Carlos Luelmo Montero Dealba,

    a 76-year-old businessman, and avid restorer of vintage military regalia, who was

    violently tackled outside of Bloomindale's Department Store by store security, and

    falsely accused of having stolen a shirt.

2.   In fact, Mr. Dealba, a longtime Bloomingdale's "loyalist" customer with no criminal

    record, had purchased the shirt in question prior to exiting the store, and was carrying a

    receipt to prove it.

3.  Nevertheless, Bloomindale's security personnel proceeded to hold Mr. Dealba for well over an hour, while they apparently tried to determine how best to proceed, given their outrageous assault upon an elderly man, and the total lack of evidence that Mr. Dealba had done anything wrong.

4.  Finally, one of the security guards, upon information and belief, Defendant Store Detective Ginette Ruiz, took Mr. Dealba to the 19th Precinct in Manhattan, where she proceeded to urge Defendant Officer Jose Rodriguez to initiate a criminal case against him, so that she and her colleagues could save face.

5.  Amazingly, rather than intervene in the clearly spurious case that Ms. Ruiz was seeking to have brought against Mr. Dealba, Officer Rodriguez decided to help her create a false predicate for the arrest.

6.  Unfortunately for Officer Rodriguez, he had no stolen shirt to voucher as evidence, or security footage that might somehow demonstrate the conduct of which Mr. Dealba was being accused.

7.  As a result, Rodriguez himself seemed confused, at first telling Mr. Dealba, somewhat sheepishly, that he had to process him because the security guards had alleged that he had "assaulted" them.

8.  In fact, not only had Mr. Dealba, who was 75 at the time, never assaulted any guards, but no such assault was ever alleged by Bloomingdale's security or filed by Officer Rodriguez.

9.  Notwithstanding, upon searching Mr. Dealba and his effects, Rodriguez recovered a small attaché containing miniature jeweler's tools that Mr. Dealba used in restoring his vintage military regalia.

10. Using the tools as the arrest predicate, Officer Rodriguez proceeded to issue a Desk Appearance ticket to Mr. Dealba, charging him solely with NYPL 140.35, Possession of Burglar's Tools.

11. When Rodriguez later had to specify what he meant by "burglar's tools" in his supporting deposition, he swore falsely that he had recovered a "box cutter" from Mr. Dealba, which, based on his training an and experience, was "commonly used to cut security tags on store merchandise."

12. It took seven months, the retention of a private lawyer, and considerable time and trauma before the case was finally dismissed on motion from the New York County District Attorney's Office.  However, the pain of Mr. Dealba's ordeal continues to this day.

13. Bloomindale's, Inc., and the individual Bloomingdale's/NYPD Defendants are now being sued for their respective roles in the violation of Mr. Dealba's rights.

14. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers, and for continuing to tolerate and defend a widely publicized departmental culture of willful indifference toward the rights of citizens.

**JURISDICTION**

15. Jurisdiction is founded upon the existence of a Federal Question.

16. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. Section 1983 and arising under the law and statutes of the State of New York.

3

17. Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute, ordinance, regulation, custom and usage of rights, privileges and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## **VENUE**

18. Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Southern District.

## **PARTIES**

19. Upon information and belief, at all times relevant and hereinafter mentioned, Plaintiff ALFONSO CARLOS LUELMO MONTERO DEALBA was a joint resident of both Madrid, Spain, and New York County in the City of New York.

20. Upon information and belief, at all times relevant and hereinafter mentioned, the Defendant, BLOOMINDALE'S, INC., is and was a foreign business corporation, duly licensed and authorized to do business in the State of New York.

21. At all times hereinafter relevant and hereinafter mentioned, the Defendant, BLOOMINDALE'S, INC., transacted business in the State of New York.

22. At all times relevant and hereinafter mentioned, the Defendant, BLOOMINDALE'S, INC., derived substantial revenue from goods used or consumed or services rendered in the State of New York.

23. At all times relevant and hereinafter mentioned, the Defendant, BLOOMINDALE'S, INC., expected, or should reasonably have expected, its acts to have consequences in the State of New York.

24. At all times relevant and hereinafter mentioned, the Defendant, BLOOMINDALE'S, INC., derived substantial revenue from interstate or international commerce.

25. At all times relevant and hereinafter mentioned, the Defendant, BLOOMINDALE'S, INC., owned the premises located at 1000 Third Avenue, New York, New York, 10022.

26. At all times relevant and hereinafter mentioned, the Defendant, BLOOMINDALE'S, INC., leased the premises located at 1000 Third Avenue, New York, New York, 10022.

27. At all times relevant and hereinafter mentioned, the Defendant, BLOOMINDALE'S, INC., Defendant's servants, agents, or employees, operated, managed, and maintained the business located at the aforesaid premises located at 1000 Third Avenue, New York, New York, 10022.

28. At all times relevant and hereinafter mentioned, Defendant GINETTE RUIZ was employed by Defendant BLOOMINGDALE'S, INC. as a "Store Detective."

29. At all times relevant and hereinafter mentioned, Defendants BLOOMINGDALE'S PERSONNEL JOHN/JANE DOE #1-10[1] were employed by BLOOMINGDALE'S, INC. as security guards and/or other management and staff.

30. At all times relevant, Defendants GINETTE RUIZ and BLOOMINGDALE'S PERSONNEL JOHN/JANE DOE #1-10 were acting in the scope of their employment,

---

[1] Plaintiff's diligent search for the identity of all Bloomingdale's personnel involved remains ongoing. Accordingly, Bloomingdale's, Inc. remains on notice that the plaintiff intends to name every employee involved as a defendant once their identities are revealed through discovery. All appropriate steps to prepare the employees and otherwise inform them that they will be individually named should be undertaken forthwith.

and as agents for Defendant BLOOMINGDALE'S, INC.; as such, Defendant
BLOOMINGDALE'S, INC. is vicariously liable to the Plaintiff for its employees'
common law torts via the principle of respondeat superior.

31. At all times relevant, Defendant CITY OF NEW YORK, was and still is a municipal
corporation duly organized and existing under and by virtue of the laws of the State of
New York, and that at all times relevant all Defendant officers were acting for, upon, and
in furtherance of the business of their employer and within the scope of their
employment.

32. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF
NEW YORK, its agents, servants, and employees, operated, maintained and controlled
the NEW YORK CITY POLICE DEPARTMENT, including all the police officers
thereof.

33. Upon information and belief, at all times hereinafter mentioned, Defendant OFFICER
JOSE RODRIGUEZ, and OFFICER(S) JOHN/JANE DOE #1-10[2] were employed by the
Defendant CITY OF NEW YORK, as member(s) of its police department, assigned to the
19th Precinct.

34. The NEW YORK CITY POLICE DEPARTMENT is a local governmental agency, duly
formed and operating under and by virtue of the Laws and Constitution of the State of
New York and the POLICE CHIEF OF THE NEW YORK CITY POLICE
DEPARTMENT is responsible for the policies, practices, and customs of the NEW

---

[2] Plaintiff's diligent search for the identity of all N.Y.P.D. officers involved remains ongoing.  Accordingly, the
Corporation Counsel remains on notice that the plaintiff intends to name every officer involved as a defendant once
their identities are revealed through discovery.  All appropriate steps to prepare the officers' defenses and otherwise
inform them that they will be individually named should be undertaken forthwith.

YORK CITY POLICE DEPARTMENT as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

35. This action arises under New York State common law, and the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State of New York.

36. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

37. Mr. Dealba's claim arose on August 15, 2017 at about 7:22 PM just outside of Bloomingdale's Department Store, located at 1000 Third Avenue, New York, New York, 10022.

38. Dealba, who was 75 at the time, had been a longtime Bloomingdale's "loyalist" customer and had no criminal record; Dealba had just purchased two shirts, one of which was blue, and was carrying a store receipt to prove it.

39. Mr. Dealba, who is also an international business man and professional restorer of vintage military regalia, was also carrying a small attaché case that contained miniature jeweler's tools that he used for his restorations.

40. Without warning, as Dealba exited the store, he was suddenly tackled by two plain clothes Bloomindale's security personnel: one male Hispanic, approximately 5'10 and 30 years old, and upon information and belief, Defendant Ruiz.

41. Initially, a terrified Mr. Dealba thought that he was being mugged, as the guards did not identify themselves until after they dragged Mr. Dealba back into the store.

42. Mr. Dealba, a senior citizen, could not, and did not, make any effort to resist.

43. Once inside the Bloomindale's holding area, it became apparent that the security personnel knew that they had made a mistake.  Whispered conversations ensued, involving multiple employees and a gathering crowd of what seemed to be senior management and/or other security personnel.

44. Finally, after over an hour of this, Defendant Store Detective Ginette Ruiz forcibly delivered Mr. Dealba to the 19th Precinct in Manhattan, where he was met by Defendant Officer Rodriguez.

45. Defendant Ruiz proceeded to urge Defendant Officer Rodriguez to initiate a criminal case against Dealba, apparently so that she and her colleagues could save face.

46. Amazingly, rather than intervene in the clearly spurious case that Ms. Ruiz was seeking to bring against Dealba, Rodriguez sought to help her create a false predicate for the arrest.

47. Unfortunately for Officer Rodriguez, he had no stolen shirt to voucher as evidence, or security footage that might somehow demonstrate the conduct of which Mr. Dealba was being accused.

48. As a result, Rodriguez himself seemed confused, at first telling Mr. Dealba, somewhat sheepishly, that he had to process him because the security guards had alleged that he had "assaulted" them.

49. In fact, no assault was ever alleged by Bloomingdale's security personnel or filed by Officer Rodriguez, giving rise to an inference that Rodriguez was grasping at straws, to justify the wrongful arrest.

50. Nevertheless, upon searching Mr. Dealba and his effects, Officer Rodriguez recovered a small attaché that contained miniature jeweler's tools that Mr. Dealba used to restore his vintage military regalia.

51. Using the tools as the arrest predicate, Officer Rodriguez proceeded to issue a Desk Appearance ticket to Mr. Dealba, charging him solely with NYPL 140.35, Possession of Burglar's Tools.

52. When Rodriguez later had to specify what he meant by "burglar's tools" in his supporting affidavit, he swore falsely that he had recovered a "box cutter," which, based on his training an and experience, was "commonly used to cut security tags on store merchandise."

53. The criminal complaint which finally emerged, with information primarily supplied and sworn to by Defendant Ruiz, alleged violations of NYPL 140.35 (Possession of Burglar's Tools), NYPL 155.25 (Petit Larceny), and NYPL 165.40 (Criminal Possession of Stolen Property in the Fifth Degree).

54. No surveillance footage was ever produced by the Defendants that showed Mr. Dealba engaged in the conduct of which he was accused.

55. No surveillance footage of Mr. Dealba engaged in criminal activity was ever produced, because no such footage exists.

56. No surveillance footage of Mr. Dealba engaged in criminal activity exists, because Mr. Dealba never engaged in the activities alleged by the Defendants.

57. The blue shirt Ruiz alleged that Mr. Dealba had stolen, corresponded with the receipt that Mr. Dealba was carrying, and the Defendants knew, or should have known that.

58. Mr. Dealba purchased the shirt with his "loyalist" Bloomingdale's card, providing yet another way for the Defendants to verify that Mr. Dealba had rightfully purchased the shirt.

59. Ironically, the only crimes that arose from the interaction of the parties, were the assault and false reporting carried out by the *Defendants*.  Yet the Defendants have never been held accountable for their actions in any way.

60. It took seven months, the retention of a private lawyer, and considerable time and trauma before the criminal case against Mr. Dealba was finally dismissed on motion from the New York County District Attorney's Office.

61. However, the pain of Mr. Dealba's ordeal continues to this day.


**AS AND FOR THE FIRST CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF AGAINST DEFENDANT OFFICER RODRIGUEZ AND**
**OFFICER(S) JOHN/JANE DOE #1-10**

**Violation of Constitutional Rights Under Color of State Law**
**-False Arrest/Imprisonment-**

62. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 61.

63. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization.  It also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

64. The actions of the police officer Defendants as stated herein violated Mr. Dealba's rights under Federal law.

65. It is clear the police officer Defendants lacked any objectively reasonable basis to support a legitimate probable cause arrest.

66. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Mr. Dealba.

67. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

68. As a direct and proximate result of the unconscionable acts described above, Mr. Dealba has been substantially injured.

**AS AND FOR THE SECOND CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT OFFICER RODRIGUEZ**
**AND OFFICER(S) JOHN/JANE DOE #1-10**

**Violation of Constitutional Rights Under Color of State Law**
**—Malicious Prosecution—**

69. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 68.

70. The Fourth Amendment of the United States Constitution protects citizens from overzealous and malicious prosecution by government officials without probable cause.

11

71. The Plaintiff was prosecuted, without probable cause, relative to the August 15, 2017 incident, as set forth herein.

72. Said charges resulted in a loss of liberty for the Plaintiff, and he incurred substantial financial and emotional damages as a direct result.

73. The Plaintiff's criminal proceeding was terminated in favor of the Plaintiff, as the case was dismissed on motion from the New York County District Attorney's Office.

74. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of the Plaintiff.

75. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

76. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.


**AS AND FOR THE THIRD CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF AGAINST DEFENDANT OFFICER RODRIGUEZ AND**
**OFFICER(S) JOHN/JANE DOE #1-10**

**Violation of Constitutional Rights Under Color of State Law**
**-Denial of Constitutional Right to Fair Trial Due to Fabrication of Evidence-**

77. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 76.

78. Defendant police officers created and/or ratified false evidence against Plaintiff, as herein described.

79. Defendants officers forwarded false and material evidence and false information to prosecutors in the New York County District Attorney's office.

80. Defendants misled the judge and the prosecutors by creating and/or ratifying false evidence against the Plaintiff.

81. In creating and/or ratifying false evidence against Plaintiff, in forwarding false evidence and information to prosecutors, Defendants violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

82. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

83. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

### AS AND FOR THE FOURTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT OFFICER RODRIGUEZ AND OFFICER(S) JOHN/JANE DOE #1-10

**Violation of Constitutional Rights Under Color of State Law**
**-Conspiracy to Violate Plaintiff's Civil Rights-**

84. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 83.

85. Defendant police officers, as state actors in their individual capacities pursuing personal interests wholly separate and apart from that of the City of New York or New York City Police Department, conspired with Bloomingdale's personnel as set forth herein, reached a mutual understanding, and overtly acted in concert to undertake a course of conduct violative of the Plaintiff's constitutional rights by:

    a.  Agreeing to deliberately and maliciously fabricate a basis for arresting and prosecuting the Plaintiff; and

b.   Agreeing not to intervene with any of the Bloomingdale's personnel in their

violation of Plaintiff's rights, as set forth herein.

86. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983,

given that said actions were undertaken under color of state law.

87. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to

the rights of the Plaintiff.

88. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff

has been substantially injured.

**AS AND FOR THE FIFTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT OFFICER RODRIGUEZ
AND OFFICER(S) JOHN/JANE DOE #1-10**

**Violation of Constitutional Rights Under Color of State Law
-Failure to Intercede-**

89. Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 88.

90. Defendant Officer Rodriguez and Officer(s) Doe failed to stop Defendant Ruiz from

deliberately and maliciously fabricating a basis for arresting and prosecuting the Plaintiff;

instead, they joined her in doing so.

91. It is widely recognized that all law enforcement officials have an affirmative duty to

intervene to protect the clearly established constitutional rights of citizens from

infringement by other law enforcement officers in their presence.

92. At all times relevant herein, the right to be free from deprivations of liberty interests

caused by unjustifiable stops, arrests, searches, and force incidents were clearly

established constitutional rights that a reasonable person would have known.

93. At all times relevant, Defendants had a reasonable opportunity to intervene, but elected not to do so; their actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of the Plaintiff.

94. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

95. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT CITY OF NEW YORK**

**Violation of Constitutional Rights Under Color of State Law**
**-Implementation of Municipal Policies, Practices, and Customs that Directly Violate**
**Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional**
**Deprivations and Failure to Train and Supervise Employees**
**Under Color of State Law-**

96. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 95.

97. Upon information and belief, Defendants Rodriguez, and police officer Doe(s) #1-10, who were supervisors and final decision makers, as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, allowed or encouraged employees to fabricate evidence against the Plaintiff, allowed or encouraged failures to disclose exculpatory evidence, allowed or encouraged the forwarding of false or otherwise unreliable evidence to prosecutors, and allowed or encouraged officers to testify falsely.

98.  In the alternative, and upon information and belief, Defendants Rodriguez and Doe(s) #1-10 instituted policies addressing the topics listed above, but through a culture of gross negligence, carelessness, malice, and/or the enforcement of illegal and immoral arrest quotas, demonstrated a deliberate and willful indifference to the constitutional rights of the Plaintiff.

99. Upon information and belief, from approximately 2008 to 2009, Officer Adrian Schoolcraft secretly recorded numerous roll calls at the precinct in which superiors urged officers to manipulate the "stats" the department was under pressure to produce: specifically, officers were told to arrest people who were doing little more than standing on the street.  After voicing his concerns, Schoolcraft was allegedly harassed and reassigned to a desk job.  After he left work early one day, a SWAT unit is alleged to have illegally entered his apartment, physically abducted him and forcibly admitted him to a psychiatric facility, where he was held against his will for several days.   In 2010, Schoolcraft released the audio recordings to *The Village Voice*, leading to the reporting of a multi-part series titled *The NYPD Tapes.*  That same year Schoolcraft filed a lawsuit against the NYPD and Jamaica Hospital.  In 2012 *The Village Voice* reported that a 2010 unpublished report of an internal NYPD investigation found the 81st precinct had evidence of quotas.

100. Upon information and belief, in or about July of 2013, the Kings County District Attorney's efforts substantially expanded, as the office announced the formation of an unprecedented panel of former prosecutors, professors, and retired judges to review as many as 50 convictions involving a former Kings County detective, Louis Scarcella, who

is alleged to have regularly sought false statements from witnesses, and whose work appears to have sent an array of innocent citizens to prison.

101.  Upon information and belief, another former Kings County Detective, Michael Race, whose work has also been linked to the conviction of innocents, has been quoted in press accounts as stating that of the 750 murder investigations he ran, only one was "done the correct way, A to Z."

102. Long time Kings County District Attorney Charles Hynes was voted out of office amidst widespread[3] allegations of misconduct, and faced potential indictment.[4]

103.  In August of 2013, federal Judge Shira A. Sheindlin of the Southern District of New York found the New York City Police Department resorted to a "policy of indirect racial profiling" as officers routinely stopped "blacks and Hispanics who would not have been stopped if they were white."  The Plaintiff in this case is Hispanic.

104.  It is also true that following the landmark Floyd v. City of New York, 959 F.Supp. 2d 540 (S.D.N.Y. 2013), Judge Scheindlin appointed a monitor to oversee the N.Y.P.D.'s compliance with Court Ordered remedies.  (Id. at 543.)  While the "stop and frisk" in Floyd is not specifically at issue in the present case, the related issue of inadequate monitoring and supervision of officers certainly is—and it is notable that the N.Y.P.D. monitor's recent reports have emphasized that departmental reforms "need[] to be communicated and reinforced better, not just at the top, but throughout the

---

[3] See e.g., Charles Hynes, Scandal-Plagued District Attorney, Faces Verdict at the Polls, ProPublica, September 6, 2013, available at http://www.huffingtonpost.com/2013/09/06/charles-hynes-brooklyn-district-attorney-election_n_3881395.html; Brooklyn DA Charles Hynes in the Hot Seat for Protecting Prosecutor Who Imprisoned Innocent Man, New York Daily News, November 16, 2012, available at http://www.nydailynews.com/new-york/b-klyn-da-charles-hynes-hot-seat-wrongful-conviction-article-1.1203342; Ex-Brooklyn Prosecutor Charles J. Hynes Accused of Misues of Funds, New York Times, available at http://www.nytimes.com/2014/06/03/nyregion/charles-hynes-brooklyn-district-attorney-inquiry.html.
[4] Indictments Looming in Probe of ex-Brooklyn D.A. Charles Hynes, New York Post, May 28, 2016, available at http://nypost.com/2016/05/28/indictments-looming-in-probe-of-ex-brooklyn-da-charles-hynes/.

Department….Ultimately, this is a challenge of leadership, particularly for those who supervise officers engaged in day-to-day enforcement activities—sergeants, their immediate supervisors, and the precinct and unit commanders who set the tone for those under them.  This challenge implicates every aspect of the court orders and the parties' agreements, and it will not be met without changes in policies, training, supervision, and all the ways the NYPD incentivizes good police behavior and discourages unacceptable behavior.  This is a large task that will take time and substantial effort to accomplish."

105. In 2011, some two-dozen Bronx-based NYPD officers were subject to criminal charges[5] involving allegations of "fixing" tickets for friends and relatives.

106.  Upon information and belief, in July of 2012, after discovering that many people arrested on charges of criminal trespass at Bronx County housing projects were innocent, even though police officers had provided written statements to the contrary, the Bronx district attorney's office quietly adopted a policy[6] of no longer prosecuting people who were stopped at public housing projects and arrested for trespassing, unless the arresting officer was interviewed to ensure that the arrest was warranted.

107. The nature, regularity, and scale of such revelations, and the extraordinary efforts being undertaken in response to a highly publicized slew of wrongful convictions, gives rise to an inference of systemic incompetence and corruption on the part of the New York City Police Department, as such a legacy of injustices cannot plausibly be laid at the feet of a few rogue officers.

---

[5] See Big Inquiry Into Ticket-Fixing in New York, New York Times, April 17, 2011, available at http://www.nytimes.com/2011/04/18/nyregion/ticket-fixing-by-police-investigated-in-new-york.html?_r=0&adxnnl=1&adxnnlx=1400166713-OIwMCI6A6jnLyJC00DdeoQ
[6] Prosecutor Deals Blow to Stop and Frisk Tactic, New York Times, September 25, 2012, available at http://www.nytimes.com/2012/09/26/nyregion/in-the-bronx-resistance-to-prosecuting-stop-and-frisk-arrests.html?pagewanted=all

108.  Defendant(s) also, upon information and belief, demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise officers in Bronx County and the 19th Precinct.

109.  The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

110.  This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

111. Upon information and belief, none of the Defendants named herein have been disciplined in any way for their actions relative to the Plaintiff; nor has the Internal Affairs Bureau undertaken an investigation of the events complained of herein.

112.  As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.


## STATE CLAIMS


### AS AND FOR THE SEVENTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANTS BLOOMINGDALE'S INC., RUIZ AND BLOOMINGDALE'S PERSONNEL JOHN DOE

**—Assault & Battery—**

113.  Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 112.

114.  As set forth above, Defendants Ruiz and Doe committed assault and battery on Plaintiff by causing Plaintiff to be in apprehension of imminent, harmful and offensive contact, and in fact, making harmful and offensive contact with the Plaintiff; in so doing, violating

Plaintiff's rights under New York law, without just cause or legal right, willfully and maliciously attacking the Plaintiff with unnecessary force.

115.   The actions of the Defendants were intentional, unlawful, and unwarranted, and in violation of Penal Law Section 35.30 of the State of New York and of Article 140 of the Criminal Procedure Law of the State of New York.

116.   As a direct and proximate result of the Defendant's conduct as described above, the Plaintiff has been substantially injured.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANTS BLOOMINGDALE'S INC., RUIZ AND BLOOMINGDALE'S PERSONNEL JOHN/JANE DOE #1-10

### -Negligent Infliction of Emotional Distress-

117.   Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 116.

118.   As a direct and proximate result of the Defendants' outrageous departure from accepted standards of care, Plaintiff was caused to suffer severe emotional distress.

## AS AND FOR THE NINTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF AGAINST DEFENDANTS BLOOMINGDALE'S INC., RUIZ AND BLOOMINGDALE'S PERSONNEL JOHN/JANE DOE #1-10

### -Intentional Infliction of Emotional Distress-

119.   Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 118.

120.   At all times mentioned herein, Defendants' conduct was intentional, extreme and outrageous.

121.  As a direct and proximate result of the acts described, the Plaintiff has suffered severe emotional distress.

<u>**AS AND FOR THE TENTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF AGAINST
DEFENDANTS BLOOMINGDALE'S INC. AND RUIZ**</u>

**-Defamation Per Se-**

122.  Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 121.

123.  At 9:00PM, inside the 19th Precinct, located at 153 East 67th Street, New York, NY 10065, Defendant Ginette Ruiz falsely alleged to NYPD police officer Jose Rodriguez that she observed the Plaintiff "outside the store in possession of the property without paying for it."

124. At the same place and time, Ruiz falsely stated to Rodriguez that she "recovered a shirt, property which belonged to the store and for which the defendant had no receipt, from the defendant's bag."

125. At the same place and time, Ruiz falsely stated to Rodriguez that the Plaintiff "did not have permission or authority to take or possess the property…".

126. On October 23, 2017, at 8:49 PM, Ruiz faxed a signed supporting deposition swearing to the truth of the false statements that she made to Rodriguez, to the New York County District Attorney's Office.  The document was timestamped as "received" by the New York County District Attorney's Office on October 24, 2017, at 8:30 AM.

127. Defendant Ruiz's statements were false, and said false statements were published, without privilege or authorization, to a substantial number of third parties.

128. Defendant Ruiz effectively stated that the Plaintiff committed serious crimes, including Larceny, and said statements likewise tended to injure the Plaintiff in his trade, business or profession.

129. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of the Plaintiff.

130. As a direct and proximate result of the unconscionable acts described above, the Plaintiff has been substantially injured.

**AS AND FOR THE ELEVENTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF AGAINST
BLOOMINGDALE'S INC., RUIZ AND BLOOMINGDALE'S PERSONNEL
JOHN/JANE DOE #1-10**

**-False Arrest/Imprisonment-**

131. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 130.

132. Defendants knowingly and deliberately conspired together to have the plaintiff arrested for a serious crime they had knowledge that he did not commit.

133. Defendants intentionally subdued, assaulted, handcuffed, and confined the Plaintiff, who was conscious, without consent or privilege.

134. In portraying themselves as legitimate peace officers and falsely alleging illegal conduct on the part of the Plaintiff to the New York City Police Department, Defendants took an active role in the arrest of the plaintiff, encouraging and/or importuning New York City police officers to act, such that the plaintiff would be arrested and confined.

135. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of the Plaintiff.

136. As a direct and proximate result of the unconscionable acts described above, the

Plaintiff has been substantially injured.

**AS AND FOR THE TWELFTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF AGAINST
BLOOMINGDALE'S INC., RUIZ AND BLOOMINGDALE'S PERSONNEL
JOHN/JANE DOE #1-10**

**-Malicious Prosecution-**

137. Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 136.

138. Defendants each knowingly and deliberately conspired together to have the Plaintiff

falsely arrested for a serious crime, absent probable cause, and as a direct and proximate

result, a criminal proceeding was initiated against Plaintiff.

139. Charges against the Plaintiff were dismissed on motion from the New York County

District Attorney's office.

140. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference

to the rights of the Plaintiff.

141. As a direct and proximate result of the unconscionable acts described above, the

Plaintiff has been substantially injured.

**AS AND FOR THE THIRTEENTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF AGAINST
DEFENDANTS BLOOMINGDALE'S INC., RUIZ AND BLOOMINGDALE'S
PERSONNEL JOHN/JANE DOE #1-10**

**-Negligence-**

142. Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 141.

143. At all relevant times, Defendants owed Mr. Dealba a common law duty to use reasonable care in carrying out the business of Bloomindale's Department Store, so as to avoid the foreseeable risk of injury to patrons.

144. Defendants breached their duty of reasonable care to the Plaintiff in failing to act reasonably, and/or failing to adequately abide by Bloomingdale's Inc.'s own published policies and procedures.

145. Had Defendants acted reasonably, and/or followed their own published policies and procedures, the Plaintiff would not have incurred the damages set forth herein.

146. The injuries to the Plaintiff were due wholly and solely to the negligence of the Defendants, and without any comparative negligence contributing thereto.

147. Defendants' negligence was the direct and proximate cause of the Plaintiff's injuries.

148. As a result of the aforedescribed, the Plaintiff has been substantially injured.

### AS AND FOR THE FOURTEENTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF AGAINST DEFENDANTS BLOOMINGDALE'S INC., RUIZ AND BLOOMINGDALE'S PERSONNEL JOHN/JANE DOE #1-10

#### -Negligent Hiring, Retention, and Supervision-

149. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 148.

150. Upon information and belief, Defendants Bloomingdale's, Inc., and/or Bloomingdale's Personnel John/Jane Doe #1-10, were directly responsible for hiring and/or training and/or supervising and/or retaining Defendants Ruiz and other Bloomingdale's Personnel John/Jane Doe #1-10

151. Upon information and belief, Defendants Bloomingdale's, Inc., and/or Bloomingdale's Personnel John/Jane Doe #1-10, were supervisor(s) and final decision maker(s), and

acted with a gross and callous recklessness, negligence and deliberate indifference to the Plaintiff's rights, in that they failed to adequately hire, screen, discipline, train, supervise or otherwise direct Bloomingdale's employees concerning the rights of citizens, including not following reasonable standards of customer care, not assaulting customers, not falsely accusing customers of crimes, and not falsely arresting and imprisoning them.

152. At all relevant times, the malicious and intentional wrongdoing of Defendants, as set forth herein, involved one or more supervisors, acting in the course of their employment, ordering, participating in, and/or ratifying Bloomingdale's Inc.'s employees' outrageous conduct.

153. As a direct and proximate result of the despicable acts described above, the Plaintiff has been substantially injured.

## DEMAND FOR PUNITIVE DAMAGES

154. The actions of Defendants described herein were extreme and outrageous and shock the conscience of a reasonable person.  Consequently, an award of punitive damages is appropriate to punish the Defendants.  The Plaintiff does not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

155.  The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alfonso Carlos Luelmo Montero Dealba requests that this Honorable Court grant him the following relief:

A.  A judgment against Defendants Bloomingdale's, Inc., Bloomingdale's Store Detective Ginette Ruiz, Bloomindale's Personnel Doe(s) #1-10, Officer Jose Rodriguez, and NYPD Officer(s) Doe(s) #1-10 for compensatory damages, and punitive damages in an amount to be determined by a properly charged jury;

B.  A judgment in favor of Plaintiff against Defendant City of New York for compensatory damages in an amount to be determined by a properly charged jury;

C.  A monetary award for attorneys fees and costs of this action from Defendants City of New York, Officer Jose Rodriguez, and NYPD Officer(s) Doe(s) #1-10, pursuant to 42 U.S.C. § 1988;

D.  Any other relief this Court finds to be just, proper, and equitable.


Dated:  New York, New York
        August 7, 2018

Respectfully Submitted By:

The Law Office of Andrew L. Hoffman, P.C.
By:


_____/s/_____
Andrew L. Hoffman, Esq.
SDNY Bar Code Number: AH2961
261 Madison Avenue, 12 Floor
New York, New York 10016
T:      (212) 736-3935
E: ahoffman@andrewhoffmanlaw.com